ARMSTRONG, Judge.
The defendant, Harold Christian, and his co-defendant, Michael Knight, were charged by bill of information with manslaughter, a violation of R.S. 14:31. After a trial, a twelve member jury found the defendant guilty as charged.[1] The defendant’s motion for a new trial was denied and pursuant to a multiple bill filed by the State, the trial court set aside the defendant’s original sentence and sentenced him as a third offender to serve thirty-five years at hard labor. It is from this conviction and sentence that the defendant has appealed.
On August 21, 1988, Officer Lynell Sylve and her partner, Officer Irma Williams, received a call of a possible homicide at 913 Thalia Street. The defendant called a police officer at the Jefferson Parish Sheriff’s Office from a nearby pay phone and provided this information. The defendant stated that he would be waiting for the officers when they arrived.
The defendant was sitting outside 913 Thalia Street when the officers arrived. His shirt was open and there was a long knife wound in his stomach. The defendant told the officers that the victim had cut him and, “I stabbed him to death." The defendant’s wound was still bleeding when the officers arrived.
Officer Williams stayed with the defendant as Officer Sylve entered the residence. There she saw co-defendant, Michael Knight, and found the victim was “cold like ice” and that rigor mortis was setting in. She also testified that the blood on the victim was dry. Blood was found in three separate areas of the residence and the body was found on the floor in front of a blood-stained sofa. Officer Sylve testified that there were no trails of blood. Based on the position of the victim’s body and the blood stains in the house, Officer Sylve estimated that most of the fighting between the victim and the defendant occurred in the bathroom.
Sergeant Malcolm Williams arrived at 913 Thalia Street shortly after the other two officers. He testified the defendant told him that three or four hours earlier he was in a fight and had killed his friend. Sergeant Williams testified that he believed the victim had died several hours earlier as the body was cold and the victim’s blood had dried.
*911 Dr. Thomas Gilchrist testified that there were eight stab wounds inflicted on the victim through the front of his chest, the back of his chest, the right upper arm and the left forearm. Dr. Gilchrist testified that some of the wounds were consistent with the victim’s taking a defensive posture. All of the stab wounds were caused by a “stabbing” motion rather than a “slashing” motion. The victim’s blood alcohol level was .245. Dr. Gilchrist viewed several photographs of the victim and testified that the victim’s blood could have clotted and dried in several minutes and that the blueing of the victim’s skin also could have occurred within several minutes of death. The fatal wound was a stab wound which punctured the victim’s lung. Dr. Gilchrist testified that the wounds to the victim’s chest and back were caused by a downward thrust of the knife.
Co-defendant, Michael Knight, was called as a defense witness. He testified that the victim lived with him for several months until he asked the victim to leave, about eight days before this incident. The parting was not amicable. Thus, when the victim returned to the house on August 21st, a physical encounter began between them. He testified the victim was choking him and hitting him in the face. The defendant intervened and pulled the victim away from him. The victim pulled a knife, and the defendant and the victim began wrestling.
Knight testified that the defendant was able to gain control of the knife. However, he claimed the victim remained the aggressor and held the defendant against the wall. The defendant then stabbed him several times. The victim staggered into the bathroom and fell onto the bathroom floor. Knight testified that after checking for a pulse and finding none, both he and the defendant walked to a nearby phone and called the police. Knight testified that the defendant was not acquainted with the victim and the knife used to stab the victim was owned by the defendant.
Detective Steve Nichols was called as a rebuttal witness by the State. Detective Nichols testified that Knight gave two statements to police officers. Both statements were tape recorded and the tapes were played for the jury at trial. Knight’s second statement implicated the defendant in the murder of the victim. However, Knight testified that the second statement was given only after police officers told him that he would be going to the penitentiary for life because the defendant had confessed. Michael Knight stated at trial that the second statement he gave officers was not true and was given only after he was coerced.
Knight’s trial testimony was consistent with his first statement to the police officers. The contents of his second statement was used to impeach his credibility when he testified at trial.
A review of the record for errors patent reveals none.
In his only assignment of error, defendant argues that the trial court erred in denying his request to continue the trial in order that he might retain new counsel and in denying his motion for a new trial based on the same ground.
At the hearing on defendant’s motion for a new trial, defendant was represented by new counsel who argued that defendant had been prejudiced because his former attorney, by representing Knight during the pre-trial period, had a conflict of interest. Defendant maintains that this conflict manifested itself in his former attorney’s refusal to allow him to testify because his testimony might conflict with Knight’s or, worse, implicate Knight as the assailant. Defendant also contends that he fired his former attorney and, therefore, the trial should not have gone forward since he was deprived of the attorney of his choice. The evidence, however, does not support his claims.
Two weeks before trial, the court disallowed the defendant and Knight from sharing the same trial counsel and appointed a separate attorney for Knight through the Orleans Indigent Defender Program. On the day of trial, defendant moved to dismiss his attorney due to the trial court’s statement, two weeks earlier, about the conflict of interest caused by his attorney’s *912 representation of both defendants. Defendant’s trial attorney stated, however, that defendant never indicated to him his dissatisfaction with his representation. Thereafter, at the hearing on the motion for new trial, the court indicated that it denied defendant’s oral motion for continuance before trial on August 21st because it felt defendant made the request as a dilatory tactic. The trial court then denied defendant’s motion for new trial finding he was not deprived of effective assistance of counsel.
Multiple representation of more than one defendant is not, per se, illegal and does not violate the Sixth Amendment to the United States Constitution or Article 1, Section 3 of the Louisiana Constitution unless it gives rise to a conflict of interest. State v. Kahey, 436 So.2d 475 (La.1983). In Holloway v. Arkansas, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Court held that the trial judge is required either to appoint separate counsel or to take adequate steps to ascertain whether the risks of a conflict are too remote to warrant separate counsel. State v. Guillot, 526 So.2d 352 (La.App. 4th Cir.1988).
Defendant’s attorney had been relieved of the representation of Knight two weeks prior to trial, representing only defendant at trial. Thus, there was no actual conflict of interest at the time of trial. This by itself, however, was insufficient to diffuse all potential conflicts of interest. Knight could have been called as a witness to implicate defendant and defendant’s attorney might have been hampered in cross-examining Knight due to his prior representation. But, this potential conflict did not materialize, as Knight was called as a defense witness and gave evidence which tended to exculpate defendant.
Furthermore, defendant’s contention that his counsel’s actual conflict of interest was evidenced by his refusing to allow him to testify is inaccurate. Rather, counsel’s decision not to offer defendant as a witness was an apparent trial strategy.[2] Defendant’s recitation of the facts, given at the hearing on his motion for new trial, reflects that his testimony would have been consistent with Knight’s. He claimed he stabbed the victim in self-defense then left to call the police. Defendant’s scenario differed from Knight’s, however, in that he claims he left the victim injured but alive in Knight’s custody. Thus, had defendant testified at trial, he would have found himself in the position of discrediting a witness whose testimony tended to exculpate him from the charge of manslaughter.
Additionally, the transcript reveals that defendant’s counsel advised him against testifying due to his prior felony convictions. One of the convictions was for aggravated battery with a knife following an argument, a factual situation similar to the present case. The advise was apparently based on a well-founded belief that defendant’s case would have been prejudiced if the State was able to cross-examine him about his prior convictions. Defendant’s testimony at trial would probably have added little support to his defense, yet its prejudicial effect could have been great.
Based upon this evidence, we conclude that defendant’s trial attorney was not hindered in his representation of defendant by his prior representation of Knight. Knight was called as a defense witness and defendant’s attorney attempted to establish his credibility. Knight’s trial testimony was substantially similar to the defendant’s own testimony at the hearing on the motion for a new trial. Defendant’s attorney did not labor under a conflict of interest at *913 trial. Thus, the court did not err in denying either the motion to continue trial or the motion for a new trial. This assignment is without merit.
For the foregoing reasons, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. After defendant’s trial, the State amended the bill of information as to the co-defendant, Michael Knight, to charge him with accessory after the fact of manslaughter. The co-defendant entered a plea of guilty as charged and was sentenced to serve three years at hard labor, suspended: two years active probation with a special condition of six months in Parish Prison, credit for time served.

. In State v. Messiah, 538 So.2d 175 (La.1988), the Louisiana Supreme Court stated that the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), requires not only that the attorney's performance be reasonable under prevailing professional norms rather than deficient, "but adds the specific requirement that the deficiency in performance must prejudice the defendant in order to qualify as ineffective assistance of counsel." Messiah at 186. The court in Messiah expressly noted that Strickland cautioned against “second guessing” trial counsel strategy: “a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Strickland at 669, 104 S.Ct. at 2055.